1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

| | |
|---|---|
| AMERICAN COMMERCE INSURANCE COMPANY, | CASE NO. C12-0195JLR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| MARC SCHIERMAN, et al., | |
| Defendants. | |

16

17

18

19

20

This matter comes before the court on Plaintiff American Commerce Insurance

Company's ("American Commerce") motion for default judgment (Mot. (Dkt. # 18)).

Also pending is American Commerce's unopposed motion for summary judgment (Mot.

for S.J. (Dkt. # 12)). Having considered the motion and the materials in the record, the

court GRANTS American Commerce's motion for default judgment.

21

22

ORDER- 1

1                          **I.     BACKGROUND**

2    **A.     Facts**

3          On November 2, 2011, Marc Schierman filed a complaint in Superior Court

4    ("State Court Action") against Ms. Wilson and against MJ Wilson Investments, d/b/a

5    Fairfield Acres Mobile Home Park ("Fairfield Acres"), which is owned and operated by

6    Ms. Wilson, and which is located at 223 & 227 U.S. Highway 101, Hoquiam, WA 98550.

7    (Compl. (Dkt. # 1) ¶ 1.2.)  In his complaint in Superior Court, Mr. Schierman alleges that

8    he was injured at Fairfield Acres, and argues that he is entitled to recovery of the

9    damages associated with that injury.  (Mot. for S.J. at 2-3.)  At the time of Mr.

10   Schierman's alleged injury, Ms. Wilson carried a homeowner's insurance policy ("the

11   Policy") issued by American Commerce.  (*Id*. at 2.)

12         The Policy lists the insured property as the residence at 23421 Southeast 192nd

13   Street, Maple Valley, WA 98038.  (Dinning Decl. (Dkt. # 12-1) at 7.)  The Policy

14   consists of property and liability provisions.  The property provision covers "the

15   residence on the insured premises."  (*Id*. at 15.)  For the purposes of both the property and

16   liability provisions, the Policy defines "residence" as "a one- to four-family house, a

17   townhouse, a row house, or a one- or two-family mobile home used mainly for family

18   residential purposes."  (*Id*. at 14.)  For the purpose of the property provision, the Policy

19   defines "insured premises" as the "residence and related private structures and grounds at

20   that location," provided that the insured owns and resides in the residence.  (*Id*.)  Neither

21   of the addresses of Fairfield Acres is listed on the Policy.  (*See generally id*.)  Moreover,

22

ORDER- 2

1  Ms. Wilson has conceded that Fairfield Acres is not covered by the Policy.  (Dinning

2  Decl. at 96-97.)

3          The Policy's liability provision covers injuries suffered by:

4          1) a person on the insured premises with the permission of an insured;[1] and

5          2) a person away from the insured premises if the bodily injury:

6                  a. is a result of a condition on an insured premises;
                   b. is caused by an activity of an insured;
7                  c. is caused by a person in the course of performing duties as a
                   domestic employee;
8                  d. is caused by an animal owned by or in the care of an Insured; or
                   e. is sustained by a domestic employee and arises out of and in the
9                  course of employment.

10 (*Id.* at 23 (internal quotes removed).)  The premises covered by the liability provision

11 include "the residence and related private structures and grounds at that location,"

12 provided that the insured owns and resides in the residence, and also include:

13                 1) all other premises shown on the declarations;

14                 2) that part of a residential premises, acquired by you[2] during
                   the policy period, and to be used by you as your place of
15                 residence;

16                 3) all vacant land owned by or rented to an insured. This
                   includes land where a residence is being built for the use of
17                 an insured. This does not include farm land;

18                 4) your cemetery lots and your burial vaults or those of your
                   resident relatives;

19

20

_____

21          [1] The policy defines insured to include the names stated on the Policy, as well as certain
    family members, employees, visitors and legal representatives.  (Dinning Decl. at 13.)

22          [2] "You" in the language of the Policy refers to Ms. Wilson. (Dinning Decl. at 13.)

ORDER- 3

1          5) that part of a premises not owned by an insured if it is
           temporarily used as a residential premises by an insured;

2

3          6) all premises used by you in connection with the premises
           shown on the declarations as the described location;

4          7) all access ways immediately adjoining the insured
           premises; and

5

6          8) that part of premises occasionally rented to an insured for
           other than business purposes.

7  (*Id.* at 14 (internal quotes removed).)

8       The Policy expressly excludes from its liability coverage any claims related to

9  bodily injury that "result[s] from activities related to the business of an insured, except as

10 provided by Incidental Business Coverage." (*Id.* at 26-27 (internal quotes removed).)

11 "Business" is defined by the policy to include "the rental of property to others," which is

12 the primary use of Fairfield Acres. (*Id.* at 13, 76.) The Policy did not include Incidental

13 Business Coverage. (*Id.* at 7; Mot. for S.J. at 9.)

14 **B.     Procedural History**

15      On February 3, 2012, American Commerce filed the instant suit against

16 Defendants Mr. Schierman, Ms. Wilson, and MJ Wilson Investments, d/b/a Fairfield

17 Acres (collectively, "Defendants"), seeking a declaratory judgment that it has no duty to

18 defend or indemnify Ms. Wilson or MJ Wilson Investments in the State Court Action.

19 (*See generally* Compl.) American Commerce is currently defending Ms. Wilson in the

20 lawsuit under a full Reservation of Rights. (Mot. for S.J. at 3.) Ms. Wilson has also

21 consulted other counsel. (Dinning Decl. at 96.)

22

ORDER- 4

1    Defendants did not file an answer to the complaint, and this court found Ms.

2  Wilson and MJ Investments in default on March 20, 2012 (Dkt. # 9), and found Mr.

3  Schierman in default on June 13, 2012 (Dkt. # 17).  On April 12, 2012, American

4  Commerce filed a motion for summary judgment.  (*See generally* Mot. for S.J.)  That

5  motion is currently pending and unopposed.  (*See generally* Dkt.)  American Commerce

6  filed its motion for default judgment on June 14, 2012, seeking a declaratory judgment

7  that the Policy does not provide coverage for the claim associated with the injury alleged

8  to have occurred at Fairfield Acres, and that American Commerce has no duty to defend

9  Ms. Wilson in the State Court Action or to indemnify for damages arising out of Mr.

10  Schierman's alleged injury.  (*See generally* Mot.)  The court now turns to American

11  Commerce's motion for default judgment.

12                          **II.    ANALYSIS**

13  **A.    The Default Judgment Standard**

14    Following entry of default, a court is authorized to grant default judgment at its

15  discretion.  *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.

16  1980). In exercising discretion, the factors to be considered include:  (1) the possibility of

17  prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency

18  of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a

19  dispute concerning material facts, (6) whether the default was due to excusable neglect,

20  and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

21  decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In

22  considering these factors, all factual allegations in the plaintiff's complaint are taken as

1  true, except for those relating to damages.  *Tele Video Sys., Inc. v. Heidenthal*, 826 F.2d

2  915, 917-18 (9th Cir. 1987).

3  **B.      The Law Governing Interpretation of the Policy**

4          Washington subscribes to the objective theory of contracts, which focuses on the

5  objective manifestations of the agreement.[3]  *Hearst Commc'ns Inc. v. Seattle Times Co.*,

6  115 P.3d 262, 267 (Wash. 2005).  Thus, in interpreting a contract, the court will "attempt

7  to determine the parties' intent by focusing on the objective manifestations of the

8  agreement, rather than the unexpressed subjective intent of the parties."  *Id.*

9          Under Washington law, interpretation of an insurance policy is a question of law

10  for the court.  *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002).  The court

11  should give the terms of the policy a "fair, reasonable, and sensible construction as would

12  be given to the contract by the average person purchasing insurance."  *Id.* (internal

13  quotation omitted).  When interpreting a policy's language, "the insurance contract must

14  be viewed in its entirety; a phrase cannot be interpreted in isolation." *Allstate Ins. Co. v.*

15  *Peasley*, 932 P.2d 1244, 1246 (Wash. 1997) (citing *Hess v. North Pac. Ins. Co.*, 859 P.2d

16  586, 589 (Wash. 1993)).  Terms defined within a policy are construed as defined, and

17  undefined terms are given their ordinary meaning.  *Boeing Co. v. Aetna Cas. & Sur. Co.*,

18  784 P.2d 507, 511 (Wash. 1990).  Ambiguity exists when the policy language is facially

19  susceptible to two different and reasonable interpretations.  *Peasley*, 932 P.2d at 1246-47.

20  The court must resolve ambiguity in terms most favorable to the insured.  *Id.*

21  _____

22          [3] The Policy is governed by Washington law. (Dinning Decl. at 10; Mot. at 10.)

ORDER- 6

1      The court uses a two-step process to determine whether an insurance policy covers

2  a claim. *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1004-05 (Wash.

3  1992). First, the court considers whether the insured has established that his or her claim

4  triggers coverage. *Id.* at 1004-05. Second, if coverage is triggered, the court determines

5  whether the insurer has established that its policy contains an exclusion provision barring

6  the claim. *Id.* If coverage is not triggered in the first place, "the issue of whether

7  coverage is excluded need not be reached . . . ." *W. Nat'l Assurance Co. v. Hecker*, 719

8  P.2d 954, 959 n.2 (Wash. Ct. App. 1986); *accord McDonald*, 837 P.2d at 1004-05.

9  **C.    Default Judgment is Appropriate**

10      On balance, the *Eitel* factors weigh in favor of entering default judgment in this

11  case. The court will address each factor in turn. With respect to the first factor, there is

12  great risk of prejudice to the plaintiff if the motion is denied, because this action is the

13  only means by which American Commerce can establish that it has no duty to defend or

14  indemnify Ms. Wilson.

15      Regarding the second two factors, both the sufficiency of American Commerce's

16  complaint and the merits of American Commerce's claim support the entry of default

17  judgment. Upon default, the court must take any "well-pled" allegations as true. *Fair*

18  *Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Here, American

19  Commerce's complaint contains allegations sufficient to establish that it has no duty to

20  defend or indemnify Ms. Wilson. Specifically, American Commerce alleges that (1) the

21  location where the loss occurred was not the "insured premises" as defined by the Policy;

22  and (2) the loss occurred as the result of "business activities," which are excluded under

ORDER- 7

1 | the Policy.  (Compl. ¶ 3.9.)  Taken as true, these allegations establish that American

2 | Commerce has no duty to defend or indemnify Ms. Wilson in the State Court Action.

3 |      Moreover, an examination of the merits of the complaint likewise indicates that no

4 | coverage exists.  Applying the *McDonald* test outlined above, the court finds that the

5 | Policy unambiguously does not cover Fairfield Acres or any damages arising out of the

6 | alleged injury suffered by Mr. Schierman.  The Policy states that coverage is provided for

7 | the specific residence located at 23431 Southeast 192nd Street, Maple Valley, WA

8 | 98038, which is the location of Ms. Wilson's home.  (Dinning Decl. at 7, 65.)  The

9 | alleged incident occurred at Fairfield Acres, which is not located at that address and is not

10 | a "residence" as defined by the Policy.  Fairfield Acres is located at 223 and 227 U.S.

11 | Highway 101, Hoquiam, WA 98550, neither of which is the address covered by the

12 | Policy.  (Mot. for S.J. at 2.)  The Policy defines residence as "a one- to four-family house,

13 | a townhouse, a row house, or a one- or two-family mobile home used mainly for family

14 | residential purposes."  (Dinning Decl. at 14.)  Fairfield Acres, as an eight-lot mobile

15 | home park, does not fit that description, and thus is not covered by the property provision

16 | of Policy.  (Mot. for S.J. at 6.)  The court finds it equally unambiguous that the Policy's

17 | liability provision does not cover the alleged injury that occurred at Fairfield Acres.  The

18 | liability provision covers medical payments resulting from injuries sustained "on the

19 | covered premises" or in certain circumstances not present here.  (Dinning Decl. at 23-24.)

20 | So this court finds no indication that the alleged injury that is the subject of the State

21 | Court Action triggers coverage under the Policy.

22 |

ORDER- 8

1    Even if Fairfield Acres or the alleged injury to Mr. Schierman had otherwise been

2    covered by the Policy, the claim would be excluded under the second step of the

3    *McDonald* test.  The Policy's liability coverage expressly excludes claims related to

4    bodily injury that result from activities related to the business activity of insured parties,

5    except as provided by Incidental Business Coverage, which was not included in the

6    Policy.  (*Id*. at 7, 26-27.)  Because "business activity" is defined to include the rental of

7    property to others (*id*. at 13), which is the primary purpose of Fairfield Acres, the court

8    finds it unambiguous that Ms. Wilson's operation of Fairfield Acres is a business activity,

9    and thus that the liability provisions of the Policy do not cover injuries that occur on

10   Fairfield Acres.  Thus, even if Fairfield Acres were covered by the Policy, coverage of

11   any claims associated with Mr. Schierman's alleged injury would be expressly excluded

12   by the terms of the Policy.  So application of the *McDonald* test demonstrates the strength

13   of American Commerce's claim and the sufficiency of its complaint; consequently, these

14   second and third *Eitel* factors weigh in favor of the entry of default judgment.

15   With respect to the fourth *Eitel* factor, there is no money at stake in this action, as

16   the plaintiff seeks only declaratory relief.  Regarding the fifth factor, the court finds that,

17   for the reasons indicated in the discussion of the second and third factors, there is no

18   possibility of dispute regarding the material facts of this claim.  Thus, both factors weigh

19   in favor of default judgment.

20   The sixth *Eitel* factor requires the court to consider any excusable neglect that

21   might have contributed to the opposing party's default status.  Here, there is no indication

22   of such neglect.  On the contrary, the fact that Ms. Wilson has conceded that the policy

ORDER- 9

1  does not cover the alleged incident suggests that the Defendants are in default because

2  they have effectively given up on establishing American Commerce's duty to defend or

3  indemnify.  (*See* Dinning Decl. at 96-97 (admitting that she "never thought" the Policy

4  covered this claim, but pursued the claim only because someone told her she should try).)

5  The lone factor that weighs against the entry of default judgment is the policy

6  favoring decisions on the merits.  However, "a decision on the merits is improbable if not

7  impossible when defendant takes no part in the action." *Moroccanoil, Inc. v. Allstate*

8  *Beauty Prods., Inc.*, ___ F.Supp 2d ___, 2012 WL 748776 at *1-3 (C.D. Cal. Mar. 2,

9  2012).  This final factor, then, undermined and standing alone, cannot counterbalance the

10  overwhelming weight of the other six factors, all of which support default judgment.

11  Consequently, the court finds that the *Eitel* factors weigh in favor of granting American

12  Commerce's motion for default judgment.

13

14

15

16

17

18

19

20

21

22

ORDER- 10

1

### III.   CONCLUSION

2      For the foregoing reasons, the court GRANTS American Commerce's motion for

3  default judgment (Dkt. # 18), and STRIKES as moot American Commerce's motion for

4  summary judgment (Dkt. # 12).  Accordingly, the court declares that (1) the Policy does

5  not provide coverage for the loss in the "Schierman" lawsuit;[4] and (2) American

6  Commerce has no duty to defend or indemnify Marlea Wilson, John Doe Wilson, or MJ

7  Wilson Investments, LLC, d/b/a Fairfield Acres Mobile Home Park for any damages

8  arising out of claims associated with the "Schierman" lawsuit.

9      Dated this 24th day of June, 2012.

10

11

12  _____
   JAMES L. ROBART
13  United States District Judge

14

15

16

17

18

19

20

21  _____

22  [4] For purposes of this judgment, the "Schierman" lawsuit refers to a lawsuit filed in King
   County Superior Court, Cause No. 11-2-38034-3 KNT.

ORDER- 11